Eric M. Fraser, 027241
Phillip W. Londen, 032488
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com
plonden@omlaw.com

*Attorneys for MiMedx Group, Inc.*
Additional Counsel Listed on the Signature Page

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| MiMedx Group, Inc.,<br><br>Plaintiff/Counterdefendant,<br><br>v.<br><br>Surgenex, LLC,<br><br>Defendant/Counterclaimant. | No. CV-24-03558-SMB<br><br>**PLAINTIFF MIMEDX GROUP, INC.'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 56, LRCiv 56.1(a), and the Court's Case Management Order (Doc. 30), Plaintiff MiMedx Group, Inc. ("MiMedx") submits the following statement of facts in support of its motion for partial summary judgment filed concurrently herewith.

## I. THE HUMAN PLACENTA AND THE TISSUE GRAFTS OF THE ASSERTED CLAIMS

1. The human placenta includes two membranes: the amnion and the chorion. (Doc. 107-10 (Baergen Decl.), ¶ 13.)

2. In utero, each of the amnion and chorion membranes is composed of various layers. (Doc. 107-10 (Baergen Decl.), ¶ 13; Doc. 78-5, Ex. 13 (Rebecca N. Baergen, Manual of Pathology of the Human Placenta at 88 (2d ed. 2011)) at 15–18.)

3. The layers of the amnion include epithelium cells, thin reticular fibers (basement membrane), a thick compact layer, and fibroblast layer. (Doc. 107-10 (Baergen Decl.), ¶ 13; Doc. 78-3, Ex. 2 ('494 Patent), 1:40–44.)

4. The chorionic membrane consists of chorionic mesoderm (connective tissue) and trophoblast layers. (Doc. 107-10 (Baergen Decl.), ¶ 13.; Doc. 78-5, Ex. 13 (Rebecca N. Baergen, Manual of Pathology of the Human Placenta at 88 (2d ed. 2011)) at 17–18.)

5. The spongy or intermediate layer is between the amnion and chorion in the natural placenta and consists of a loose connective tissue. (Doc. 107-10 (Baergen Decl.), ¶ 13.) Surgenex's expert, Dr. Taghizadeh, conceded that the general understanding is that there are two membranes, and "the spongy intermediate layer is a layer between the amnion and the chorion." (Doc. 126-2 (Taghizadeh Tr.), 28:4–9.)

6. The USPTO stated that "natural placenta has a substantial amount of spongy/intermediate layer between amnion and chorion, and thus the amnion and chorion are not 'directly laminated' to one another." (Doc. 82-2 ('259 Notice of Allowance), 11.) In the '494 Patent Reexamination, the USPTO found that "[i]f the spongy layer is not removed, then the amnion and chorion layers are not directly laminated to each other and

when the graft is rehydrated the layers would delaminate and potentially glide against each other . . . .” (Doc. 82-8 (’494 Reexam) at 6.)

7. The spongy layer is attached to the amnion and chorion by fine reticular tissue. (Doc. 78-4, Ex. 12 (Gordon Bourne, The Foetal Membranes, 38 Postgrad Med. J. 193 (1962)) at 159.) MiMedx’s expert, Dr. Badylak, testified that a POSA would understand the spongy layer to be the “tissue that connects” the amnion and the chorion. (Doc. 126-1 (Badylak Tr.), 19:25–20: 8.)

8. Dr. Taghizadeh stated that separating the amnion from the chorion “certainly disrupts . . . that spongy intermediate layer from a physical standpoint.” (Doc. 126-2 (Taghizadeh Tr.), 164:13–17.) Dr. Badylak agreed that, “by virtue of the separation, the intermediate spongy layer, as a layer in native form, is destroyed.” (Doc. 126-1 (Badylak Tr.), 141:21–142:2.)

9. Dr. Baergen stated that “[s]uch separation of the native amnion from its native environment necessarily means that the modified amnion in the tissue grafts is different in composition than that of native amnion.” (Doc. 78-7, Ex. 30 (Baergen Decl.), ¶ 137.)

10. Dr. Baergen further stated that the claimed grafts are different because “the modified amnion has a different number of fibroblast cells in the fibroblast layer as compared to native placental amnion.” (Doc. 78-7, Ex. 30 (Baergen Decl.), ¶137.)

11. When the amnion is separated from the chorion during processing, some of the spongy tissue may remain on both the amnion and the chorion. (Doc. 107-10, (Baergen Decl.), ¶¶ 14–15.)

12. In a prior litigation, the Northern District of Alabama stated that the ’494 Patent “sets out a method to transform naturally occurring subject matter—human placental tissue—into tissue grafts.” (Doc. 82-10, (Claim Construction Order) at 8.)

13. The Northern District of Alabama further stated that the claimed grafts are different from natural placental tissue because “in native placental tissue, the amnion and

chorion layers are not next to each other because other material ('spongy/connective material') is found between them." (Doc. 82-10 (Claim Construction Order) at 8–9.)

14. In a separate litigation, the Northern District of Georgia adopted the statement that "removing the spongy tissue distinguishes the claimed tissue grafts from any natural phenomenon: amnion and chorion layers with their intermediate spongy layers removed do not exist in nature." (Doc. 82-13 (Order on Special Master's R&Rs) at 37.)

## II. THE ASSERTED CLAIMS AND THEIR PROSECUTION HISTORY

15. Prior to the inventions of the Asserted Patents, the methods of processing amniotic tissue grafts had several shortcomings resulting in grafts of reduced efficacy. (Doc. 78-3, Ex. 2 ('494 Patent), 2:4–9.)

16. The inventors of the Asserted Patents improved on prior grafts by developing a unique and reliable method for, among other things, processing, cleaning, and dehydrating amnion and/or chorion membranes for surgical use. (Doc. 78-3, Ex. 2 ('494 Patent), 2:4–41.)

17. The Asserted Patents describe additional benefits of amnion and/or chorion placental tissue grafts, including providing a matrix for cellular migration/proliferation, providing a natural biological barrier, and promoting healing. (Doc. 78-3, Ex. 2 ('494 Patent), 1:49–55.)

18. The specification of the '494 Patent discloses that, in processing the claimed tissue grafts, the placenta is recovered and is transferred aseptically to a sterile processing basin containing 18% hyperisotonic saline solution. (Doc. 78-3, Ex. 2 ('494 Patent), 6:11–16.)

19. Next, the specification of the '494 Patent discloses that the placenta is massaged and brought to room temperature, and the amnion layer and chorion layer are isolated from the placenta and each other. (Doc. 78-3, Ex. 2 ('494 Patent), 6:32–55.)

20. Then, the specification of the '494 Patent discloses that the isolated amnion and chorion are placed on a processing tray, where they are scraped with a blunt

instrument, finger, or sterile gauze to remove blood clots, the stromal tissue of the amnion and the trophoblast tissue of the chorion, and any other extraneous tissue. (Doc. 78-3, Ex. 2 ('494 Patent), 6:56–7:9.)

21. The specification of the '494 Patent then discloses that the amnion and chorion are placed in separate Nalgene jars filled with 18% saline solution for chemical decontamination, then additionally cleaned with an antibiotic solution. (Doc. 78-3, Ex. 2 ('494 Patent), 7:13–56.)

22. Finally, the specification of the '494 Patent discloses that the multiple layers of cleaned tissue are placed on a drying fixture, where they are dehydrated and laminated to one another. (Doc. 78-3, Ex. 2 ('494 Patent), 7:51–63, 8:52–5.)

23. In a prior litigation, the Western District of Texas gave weight to Dr. Badylak's note that the process in the Asserted Claims "creates a new product not found in nature since 'dehydrated, laminated placental tissue grafts . . . . do not occur in nature.'" (Doc. 78-8, Ex. 38 at 24.)

24. The '253, '259, and '839 Patents share the specification of the '494 Patent. (Doc. 78-3, Ex. 4 ('253 Patent); Doc. 78-3, Ex. 5 ('259 Patent); Doc. 78-3, Ex. 3 ('839 Patent).)

25. The '839 Patent similarly discloses that "[c]are is then taken to remove blood clots and other extraneous tissue from each layer of tissue until the amniotic membrane tissue and the chorion are clean and ready for further processing." (Doc. 78-3, Ex. 3 ('839 Patent), 6:63–66.)

26. During the prosecution of the '494 Patent, the patentee stated that the "substantially cleaned layers recited in the claims include some residue remaining after cleaning as it is well understood that any 'cleaned' material invariably retains elements intended to be removed." (Doc. 82-5, Ex. 4 ('494 Pat. FH, 7/29/13 Prelim. Am.) at 15.)

27. The patentee also stated that the tissue grafts of the invention "are laminated directly to each other such that the laminate is distinct from the placenta as it does not

contain the connective [i.e. spongy] layer." (Doc. 82-4, Ex. 3 ('494 Pat. FH, 1/13/14 Am. and Reply) at 6.)

28. The graft claimed in the '839 Patent is made from placental tissue by separating naturally occurring amnion and chorion, taking chorion membrane and layering chorion into two layers, and dehydrating and laminating those layers together to form a graft. (Doc. 82-6 (Badylak Decl.), ¶ 81; Doc. 78-3, Ex. 3 ('839 Patent), cl. 1.)

29. Dehydration extends the graft's shelf life beyond that of unprocessed natural placental tissue, as the removal of moisture through dehydration preserves the tissue by reducing the rate of water-soluble chemical reactions and enzymatic activity and allows for storage at ambient conditions. (Doc. 126-7 (Taghizadeh Dep., Ex. 55) at 19, 21.)

30. Chorion is thicker than amnion, and, as such, a graft with two chorion layers laminated together is thicker than a graft made of an amnion layer and a chorion layer laminated together, or a graft made of two amnion layers laminated together. (Doc. 126-7 (Taghizadeh Dep., Ex. 55) at 21, 47.)

DATED this 29th day of October, 2026.

By s/ *Matthew W. Howell*

Wesley C. Achey (*admitted pro hac vice*)
John D. Haynes (*admitted pro hac vice*)
Matthew W. Howell (*admitted pro hac vice*)
Eric Pettis (*admitted pro hac vice*)
James Atkison (*admitted pro hac vice*)
Carter White (*admitted pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000
wes.achey@alston.com
john.Haynes@alston.com
matthew.howell@alston.com
eric.pettis@alston.com
james.atkison@alston.com
carter.white@alston.com

Eric M. Fraser
Phillip W. Londen
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com
plonden@omlaw.com

*Attorneys for MiMedx Group, Inc.*