**KERCSMAR & O'HARA PLLC**
Geoffrey S. Kercsmar (#020528)
Grant S. Cragun (#034332)
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
Telephone: (480) 421-1001
gsk@KandOlaw.com
gsc@KandOlaw.com

**ROSE LAW GROUP PC**
Thomas A. Gilson (#022460)
7144 East Stetson Drive, Suite 300
Scottsdale, Arizona 85251
Telephone: (480) 505-3936
TGilson@roselawgroup.com

**ZAIGER LINDEN ROBERTI & PEPE LLC**
Douglas J. Pepe (admitted *pro hac vice*)
John Roberti (admitted *pro hac vice*)
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 540-9577
dpepe@zlrp.com
jroberti@zlrp.com

*Attorneys for Defendant Surgenex, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| MiMedx Group, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Surgenex, LLC,<br><br>Defendant. | No. 2:24-cv-03558-SMB<br><br>**DEFENDANT SURGENEX, LLC'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Surgenex, LLC ("**Surgenex**") respectfully moves for summary judgment against Plaintiff MiMedx Group, Inc. ("**MiMedx**") pursuant to FED. R. CIV. P. 56. This Motion is supported by the following Memorandum of Points and Authorities and Surgenex's Separate Statement of Facts pursuant to LRCiv 56.1(a) ("**SSOF**").

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I. INTRODUCTION

In its March 18, 2026, Claim Construction ruling, this Court construed essential terms of the MiMedx Patents-in-Suit as requiring removal of "substantially all of the extraneous material (e.g., blood clots and spongy/connective tissue)" during processing. (Dkt. 142 at 4). In successfully arguing for this construction, MiMedx ran itself straight into the teeth of a fact it cannot prove: the evidence at trial will show that Surgenex did not, in fact, remove "substantially all" the spongy (or intermediate) layer when it manufactured any of the Accused Products.

That factual dispute is for the jury. But MiMedx cannot establish infringement as a matter of law for independent reasons. Its asserted damages claim is also multiples of what the patent law allows. These issues are ripe for resolution on summary judgment.

In this Motion, Surgenex seeks summary judgment on the following four grounds:

- No pre-suit damages under 35 U.S.C. § 287(a): '494 Patent, '253 Patent, and '259 Patent;
- Non-infringement (SurGraft TL/XT/XTC): '494 Patent, claims 9-10 and '259 Patent, claims 1 and 7-12 (SurGraft TL/XT); '253 Patent, claim 7 (SurGraft XT); '839 Patent, claims 1-2 (SurGraft XTC);
- Non-infringement (all Accused Products): '259 Patent, claims 1 and 5-12; and
- Invalidity under 35 U.S.C. § 102 (SurGraft AC/ACA/TL/XT): '494 Patent, claims 9-10.

---

[1] Unless otherwise indicated, emphasis is added to, and internal citations, brackets, and quotation marks are omitted from, quotations throughout this Memorandum of Points and Authorities and the SSOF. All paragraph references ("¶__") are to the SSOF. Defined terms used in this Memorandum are as set forth in the SSOF.

None of these issues require a trial. Each turns on the Patents-in-Suit, this Court's claim constructions and settled legal principles, and documents and processes that no party disputes:

1. <u>No Pre-Suit Damages</u>. MiMedx cannot recover pre-suit damages under § 287(a), which bars recovery unless a patentee shows it properly marked its products or provided actual notice of infringement. *See id.* As a matter of law, MiMedx did not properly mark because its "Patents" web page does not "associate[] the patented article with the number of the patent." *Id.* Instead, its web page lists over 70 potentially applicable patents but names no MiMedx product the Patents-in-Suit are associated with. Nor did MiMedx give Surgenex actual notice of infringement before suing. Accordingly, damages are unrecoverable for the period before December 16, 2024. (*See* § III.A).

2. <u>Non-Infringement (SurGraft TL/XT/XTC)</u>. Surgenex's SurGraft TL, XT, and XTC products do not infringe any MiMedx patent. Those products are accused of infringing claims requiring multiple distinct layers that are laminated to each other. SurGraft XT and SurGraft TL are produced from a single piece of amnion tissue that is freed of targeted specific contaminants (though, to be clear, not substantially all the intermediate layer) and then folded over on itself. SurGraft XTC is made the same way, from a single piece of folded chorion tissue. None of these products involve two or more distinct layers that are then laminated to each other. (*See* § III.B).

3. <u>Non-Infringement (all Accused Products; '259 Patent)</u>. No Accused Product infringes the '259 Patent, which requires a "sealed, deoxygenated container." Surgenex [redacted]; it does nothing to deoxygenate them. (*See* § III.C).

4. <u>Invalidity (SurGraft AC/ACA/TL/XT; '494 Patent)</u>. A claim is anticipated if a single prior art printed publication discloses every limitation, expressly or inherently. § 102(b) (pre-AIA); *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987). Claims 9 and 10 of the '494 Patent cover a dehydrated laminate of

separated, washed amnion layers. This was anticipated by both Volkov (1973)[2] and Vishwakarma (1986).[3] (*See* § III.D).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party makes its initial showing, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## III. ARGUMENT

### A. MiMedx's Failure to Mark Limits Damages as a Matter of Law

To recover pre-suit damages, a patentee must do one of two things: (1) mark its products or packaging with "patent" or "pat.," along with the patent number or link to a public website "that associates the patented article with the number of the patent" (*see* 35 U.S.C. § 287(a)); or (2) prove that the patentee notified the infringer and the infringement continued despite the notification (*id.*).

MiMedx [redacted] None of them are properly marked under § 287(a).

*First*, [redacted]. (¶12).

*Second*, while MiMedx includes the URL "www.mimedx.com/patents" on its packaging, that website lists every MiMedx patent and provides no notice of which

---

[2] M.V. Volkov, *Arthroplasty of Joints Using Amniotic Membrane*, *in* Arthroplasty of the Hip: 5th International Symposium 53-56 (G. Chapchal ed., 1973) ("**Volkov**") (¶44).

[3] G.K. Vishwakarma et al., *Amniotic Arthroplasty for Tuberculosis of the Hip*, 68-B J. Bone & Joint Surg. 68 (1986) ("**Vishwakarma**") (¶43).

patents are claimed to apply to which specific patented articles. (¶¶13-15). It states only: "MiMedx products ***may*** *be covered* by ***one or more*** of the following U.S. patents and their foreign counterparts," followed by 117 patents listed in two general categories: (1) "AMNIOTIC MEMBRANE PRODUCT LINES" and (2) "OTHER." (¶14).[4] The first category lists 79 patents. (*Id.*). If the reader managed to spot the '494, '253, and '259 Patents among the laundry list, nothing on the website gives any indication of which of MiMedx's products they apply to. It is simply impossible to identify which of the 79 listed patents covers EpiFix, AmnioFix, or BioXclude, or whether those products are associated with any patents at all. (¶¶14-19).[5]

Courts routinely hold that "[s]imply listing all patents that could possibly apply to a product…on the patentee's marking website does not give the public notice" as required by § 287(a). *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577 (D. Del. 2019).[6] Where, as here, a website fails to "mention a single specific patented article by product number or product name," it "does nothing to 'associate' any of [the listed] patents with any of the [] identified covered products" as the statute requires. *Mfg. Res. Int'l, Inc.*, 397 F. Supp. 3d at 578.[7]

---

[4] Early iterations used "CollaFix" and "Hydrofix" instead of "Other." (¶16).

[5] Tellingly, one of MiMedx's experts [redacted]

[6] *See also* *Egenera, Inc. v. Cisco Sys., Inc.*, 547 F. Supp. 3d 112, 127-128 (D. Mass. 2021) ("Nothing on Egenera's webpage informs a visitor which of its products practice the listed patents (or a subset thereof), and which do not. In sum, Egenera's virtual marking does not sufficiently apprise the public that the [patented article] is covered" by the relevant patent), *aff'd on other grounds,* 141 F.4th 1350 (Fed. Cir. 2025); *VLSI Tech. LLC v. Intel Corp.*, 2021 WL 2773013, at *3 (W.D. Tex. Apr. 12, 2021) ("[A] mere direction to an Internet website that simply lists patents—without mentioning associating any patent with a specific patented article—does not satisfy the marking obligation as a matter of law.").

[7] MiMedx lists 12 "Human Placental Allograft[]" products on a separate page of its website. (¶15). Without even considering products MiMedx makes for others (like BioXclude), one would have to sift through and analyze 948 possible patent-product combinations in order to determine which of the 12 MiMedx products (if any) are covered by which of the 79 "AMNIOTIC MEMBRANE PRODUCT LINE[]" patents—precisely

Given its failure to validly mark, MiMedx may only recover damages for infringement accruing after it provided "actual notice" of infringement, which "requires the affirmative communication of a specific charge of infringement by a specific accused product…." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).[8] It is undisputed that MiMedx gave no notice of infringement to Surgenex before it sued on December 16, 2024. (¶¶1-2).

There is no genuine factual dispute on this issue. Summary judgment in favor of Surgenex precluding MiMedx from recovering pre-suit damages on the '494, '253, and '259 Patents is warranted.

## B. SURGRAFT TL/XT/XTC DO NOT INFRINGE

### 1. The Asserted Claims Do Not Cover Folded Products

SurGraft TL, XT, and XTC are accused of infringing claims that require a graft built from two (or more) distinct layers of tissue:

- '494 Patent claims 9 and 10 (asserted against SurGraft TL/XT) require "a laminate comprising ***two or more separated and washed layers*** which layers are selected from amnion and/or chorion wherein the layers are directly laminated ***to each other***…" (¶20);
- '259 Patent claim 1 and dependent claims 7-12[9] (asserted against SurGraft TL/XT) require "***a first layer*** which is a separated and washed amnion layer" and "***a second layer*** which is a separated and washed amnion or chorion layer" where "***the first and second layers are directly laminated to each other***" (¶20).

---

the kind of "research project" that fails to satisfy § 287(a). *Mfg. Res. Int'l, Inc.*, 397 F. Supp. 3d at 577; *VLSI*, 2021 WL 2773013, at *3 ("This Court adopts the…reasoning of the Delaware Court that rejects th[e] sort of 'research project'" created by a "datasheet listing numerous patents.").

[8] The accused infringer's awareness of the patents does not suffice. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021).

[9] *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.").

- ’253 Patent claim 7 (asserted against SurGraft XT only) claims “a laminate consisting of ***two washed layers***, wherein ***a first of said layers*** is an amnion layer” and “***a second of said layers***” is amnion or chorion, “wherein the ***first and second layers*** are dehydrated and laminated to each other” and “***the layers were separated prior to being laminated to each other***” (¶20); and
- ’839 Patent claims 1 and 2 (asserted against SurGraft XTC only) require a graft “consisting of ***a first chorion tissue layer*** and ***a second chorion tissue layer*** which is ***laminated to said first chorion tissue layer***” (¶20).

These claims all speak to two separate things laminated together, not one thing laminated to itself. In contrast, SurGraft XT and SurGraft TL are made from a single sheet of folded amnion, and SurGraft XTC is made from a single sheet of folded chorion. (¶¶21, 25). Accordingly, none infringes.

### 2. <u>The Products Do Not “Consist Of” Only Amnion and Chorion</u>

Claim 7 of the ’253 Patent (asserted against SurGraft XT) and Claims 1-2 of the ’839 Patent (asserted against SurGraft XTC) fail for an independent reason: both use the closed transitional phrase “consisting of.” “Consisting of” is a term of art that “creates a very strong presumption that that claim element is ‘closed’ and therefore ‘exclude[s] any elements, steps, or ingredients not specified in the claim.’” *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358 (Fed. Cir. 2016) (quoting *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001)).

Claim 7 of the ’253 Patent requires a laminate “consisting of two washed layers,” and further requires that the first layer “consists of an epithelial cellular layer, a basement membrane, a compact layer, and a fibroblast cellular layer” and that the second layer is “amnion that consists of” identified amnion layers or chorion. (¶20). Claims 1-2 of the ’839 Patent likewise use “consisting of” to limit the graft to “a first chorion tissue layer and a second chorion tissue layer.” (*Id.*). The spongy/intermediate layer is nowhere recited.

Under the closed “consisting of” language, any additional material not expressly

recited—including residual spongy (intermediate) layer material—is excluded. Because the claims are closed, any residual spongy layer takes the Accused Products outside their scope, and there is no evidence that Surgenex completely removes the spongy layer entirely in the manufacture of SurGraft XT or SurGraft XTC. (¶23). There is no genuine dispute on this issue, and summary judgment is warranted.

### C. No Accused Product Infringes the ’259 Patent

Claim 1 of the ’259 Patent (and dependent claims 5-12) specify a container that is both “sealed” and “deoxygenated.” (¶¶27-28). Surgenex [redacted] but does not deoxygenate them. (¶¶30-32). This warrants summary judgment.

It is undisputed that Surgenex manufactures its products [redacted] each graft in a foil pouch, which itself is placed in a Tyvek pouch. (¶30). Both pouches are then heat-sealed, and the packaged graft is terminally sterilized. (¶31). MiMedx cannot establish that Surgenex takes any step to deoxygenate any of the accused products before sealing: no Surgenex protocol or process includes a nitrogen flush, vacuum, oxygen absorber, or any other oxygen-removal step. (¶32).

To the extent MiMedx contends that an ordinary sealed pouch of the kind used by Surgenex is “deoxygenated” within the meaning of the ’259 Patent, that cannot be true. Were that the case, “deoxygenated” would add nothing to “sealed.” Courts reject constructions that make claim language superfluous. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). “Deoxygenated” must mean something more than sealing.

Because there is no genuine dispute over the facts surrounding this aspect of Surgenex’s production process, the Court may construe “deoxygenated” on summary judgment. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *see also O2 Micro Int’l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (“When the parties present a fundamental dispute regarding the scope of a claim term, it is the court’s duty to resolve it.”). The Court should conclude that by merely sealing its products’ packaging without otherwise removing oxygen, Surgenex does not

"deoxygenate" them.

This construction is consistent with the August 8, 2018, Office Action addressing the '259 Patent. There, the examiner read "deoxygenated" to mean that "at least some of the oxygen has been removed from the package." (¶33). In construing this term, the examiner considered three references. With respect to two (Klen and Schankereli) she concluded that the packages had been deoxygenated: Klen's vessels were filled with nitrogen to remove oxygen, and Schankereli's pouches were evacuated of oxygen and then filled with argon or nitrogen. (¶¶34-35). In contrast, the third reference (Hariri) merely placed the membrane in a double-peel pouch and sealed it. (¶36). Unlike Klen and Schankereli, the examiner found Hariri "silent" on deoxygenation. (*Id.*).[10]

This intrinsic evidence of meaning confirms that placing the product into a pouch and sealing it does not read on deoxygenation. (¶¶34-36). Because the examiner applied the broadest reasonable interpretation—which is never narrower than the construction this Court applies—her construction is appropriate here. *See* *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 740-42 (Fed. Cir. 2016).

MiMedx bears the burden of proving infringement with evidence that Surgenex's packaging is deoxygenated. *Celotex*, 477 U.S. at 322-25. It cannot do so.

MiMedx has adduced no evidence that Surgenex "deoxygenates" its packages. [redacted] The undisputed evidence is that Surgenex places its products into a pouch and seals it. (¶¶30-32). This is precisely the process taught in Hariri, which the examiner concluded is not

[10] MiMedx's expert, Dr. Hopkinson, quotes the examiner without referencing or addressing this context. (¶38).

deoxygenation. (¶36).

*Second*, [redacted]. Hariri in fact teaches that a sealed pouch can have an "indefinite[]" shelf life when stored at room temperature, "[p]refer[ably]…under sterile and non-oxidizing conditions." (¶36). The evidence shows that Surgenex's five-year dating rests on packaging validation of seal, sterility integrity, and terminal sterilization of the sealed [redacted]—a [redacted]. (¶¶39-40).

For these reasons, MiMedx cannot establish a genuine factual dispute that Surgenex "deoxygenates" its packaging. Summary judgment on the '259 Patent is appropriate.

### D. Claims 9 and 10 of the '494 Patent are Invalid

Invalidity must be proven by clear and convincing evidence, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011), and the Court views the summary judgment record through the prism of that burden. *See* *Anderson*, 477 U.S. at 254. A patent is invalid if every limitation is disclosed in a single prior art publication. 35 U.S.C. § 102(b) (pre-AIA); *Verdegaal* Bros. 814 F.2d at 631. The invalidity of claims 9 and 10 of the '494 Patent is demonstrable as a matter of law.

The '494 Patent issued from Application No. 13/954,974 and claims priority to an August 17, 2006, provisional. (¶41). Claim 9 claims:

> [a] dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains an epithelial cellular layer.

Claim 10 is the same, except that the amnion layer "retains a fibroblast cellular layer." Neither claim requires a chorion layer. (¶42).

The limitations in those claims were disclosed in not one but two prior publications—Volkov and Vishwakarma—decades before MiMedx applied for the patent.

For the Court's convenience, a claim chart comparing Volkov and Vishwakarma with each limitation in claims 9 and 10 of the '494 Patent is included as an exhibit to the SSOF. (¶45). MiMedx appears to contest anticipation of two: (1) whether the dried layers were "directly laminated"; and (2) whether the "mucus" Volkov and Vishwakarma removed was the spongy layer, which bears on the "washed" limitation as construed by this Court (Dkt. 142 at 4).

**"Directly Laminated."** The agreed construction of "directly laminated" means to "[u]nite two or more layers with immediate physical contact." (Dkt. 119 at 2). Both references did that:

- Volkov arranged layers in a mold and dried them at 36–38°C for six to eight hours, resulting in "thin layers…glued together" with no adhesive. (¶¶47-48).
- Vishwakarma "discloses stacking numerous wet amnion pieces on a three-dimensional mold and exposing them to ambient conditions for several hours" (¶46).

The '494 Patent laminates in the same way: with layers placed on a drying fixture and no adhesive. (¶49). The examiner who allowed these claims found that membranes layered "one upon each other during the drying step" are, "upon dehydration,…laminated together." (¶50). MiMedx did not disagree. (*Id.*). That is lamination.

Stacking wet layers and drying them is what MiMedx accuses Surgenex of doing in this case. (¶51). If that laminates Surgenex's grafts for purposes of infringement, it laminated the Volkov and Vishwakarma caps for purposes of anticipation and invalidity. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (claims "must be construed the same way for the purpose of determining invalidity and infringement").

**The "Mucus" Removed Was the Spongy Layer.** This Court's construction of

"washed" requires removing substantially all extraneous material, including the spongy tissue. (Dkt. 142 at 4, 17–21). Volkov used a razor blade to "remove the mucous layer" (¶56) and Vishwakarma used amnion "denuded of mucus." (¶52). In both references, removing the "mucus" referred to removal of substantially all of the material on and of the spongy layer. This is evident in four distinct ways:

- **Textbook Definition.** Prominent scientific literature, extant at the time of Volkov and Vishwakarma's publications, clearly described the spongy layer in this way. This includes Bourne's 1962 textbook, which defined the spongy layer as "an intricate, fine, fibril network *bathed in mucus*." (¶58). [redacted]
- **Statements of MiMedx's Experts.** MiMedx's experts' prior statements are consistent with this definition. A 2006 application by Dr. Hopkinson, filed the year of MiMedx's claimed priority date, describes removing the "mucinous acellular 'spongy' layer" and calls it a "growth factor rich mucinous spongy layer." (¶59).[11]
- **Order of Steps.** Volkov and Vishwakarma both removed the mucus after separating amnion from chorion. (¶55). The amniotic surface with spongy layer is only exposed after that separation. (¶57). The epithelium sits on the opposite face and is exposed before separation. (*Id.*). If "mucus" meant the epithelium, as MiMedx suggests, there was no need for Volkov and Vishwakarma to wait until after separation to remove it.
- **"Mesenchymal Surface."** After removing the mucus, Vishwakarma stacked the squares with "the mesenchymal surface of the membrane always facing the glass mould." (¶52). The amniotic mesenchymal cells sit on the side of the amnion

---

[11] Bourne published an article in 1962 in which he described the spongy layer's fibers as "bathed in mucin." (¶58). Dr. Badylak protests that "mucus" is not synonymous with "mucin" but does not address Bourne's textbook or the fact that he described the spongy layer using both terms synonymously in the same year. (¶60).

facing the chorion. (¶53). Its surface is only exposed through separation of the amnion and chorion and removal of the spongy layer. (*Id.*). On MiMedx's theory of epithelial removal, the spongy layer stayed in place, and no mesenchymal surface would have been exposed to face the glass mold by Vishwakarma at all.

MiMedx's strained, contrary reading creates no genuine factual dispute. [redacted]. An expert opinion that ignores the record on a disputed point does not create a triable issue. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).

Because Volkov and Vishwakarma each disclose every limitation of '494 claims 9 and 10, the Court should grant summary judgment that those claims are invalid.

## IV. CONCLUSION

For these reasons, the Court should grant summary judgment for Surgenex, holding that: (1) MiMedx may not recover damages for any alleged pre-suit infringement of the '494, '253, and '259 Patents; (2) SurGraft TL, XT, and XTC do not infringe any Patent-in-Suit; (3) no Accused Product infringes the '259 Patent; and (4) claims 9 and 10 of the '494 Patent are invalid.

Dated: October 29, 2026

By: */s/ Douglas J. Pepe*

Geoffrey S. Kercsmar
Grant S. Cragun
KERCSMAR & O'HARA PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260

Thomas A. Gilson
ROSE LAW GROUP PC
7144 East Stetson Drive, Suite 300
Scottsdale, Arizona 85251

Douglas J. Pepe (admitted *pro hac vice*)
John Roberti (admitted *pro hac vice*)
ZAIGER LINDEN ROBERTI & PEPE LLC
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 540-9577
dpepe@zlrp.com
jroberti@zlrp.com

*Attorneys for Defendant Surgenex, LLC*